IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


LEAH Y.,[1]

        Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Case No. 6:18-cv-00273-SU

**OPINION
AND ORDER**

_____

SULLIVAN, United States Magistrate Judge:

Plaintiff Leah Y. brings this action pursuant to the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner") denying her Disability Insurance Benefits ("DIB") under Title II

_____

[1] In the interest of privacy, these Findings and Recommendation use only the first name and last initial of non-governmental parties and their immediate family members.

of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on December 18, 2013, claiming disability beginning December 6, 2013. Tr. 149-50.[2] Her claim was denied initially on May 23, 2014, and on reconsideration on November 20, 2014. Tr. 63-76, 77-90. A hearing was held September 30, 2016, before Administrative Law Judge ("ALJ") MaryKay Rauenzahn. Tr. 32-62. Plaintiff testified at the hearing, represented by counsel; a vocational expert ("VE"), Francene Geers, also testified. *Id.* On December 12, 2016, the ALJ issued a decision finding plaintiff not disabled under the Act and denying benefits. Tr. 14-27. Plaintiff requested review before the Appeals Council, which was denied December 20, 2017. Tr. 1-7. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Plaintiff was born in 1971. Tr. 64. She graduated high school and has completed one year of college, and has no specialized job training, or trade or vocational school experience. Tr. 36, 162, 208. She has worked as an inventory merchandiser and retail store manager. Tr. 37, 155, 162, 180. Plaintiff has been diagnosed with fibromyalgia, obesity, migraines, chronic pain syndrome, depression, bipolar disorder, anxiety, right hip degenerative joint disease and trochanteric bursitis, mild lumbar degenerative disc disease, eczema, hypertension, and a heart block. Tr. 243, 254, 266-67, 347-48, 352, 385-86, 389, 403-04, 412, 416, 433-38, 508-09.

## LEGAL STANDARD

---

[2] Citations "Tr." refer to the official transcript of the Administrative Record. (Docket No. 11).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 6).

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the ALJ must evaluate medical and other evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). The Commissioner proceeds to the fourth step to determine whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset. Tr. 16. At step two, the ALJ found that plaintiff had these severe

impairments: fibromyalgia, obesity, migraines, chronic pain syndrome, depression, bipolar disorder, anxiety, right hip degenerative joint disease and trochanteric bursitis, and mild lumbar degenerative disc disease. *Id.* The ALJ found that these were not severe impairments for plaintiff: hypertension, eczema, and a heart signal blockage treated with a pacemaker implant. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment. Tr. 16-19.

The ALJ then found that plaintiff had the RFC to perform sedentary work, with various physical limitations; with various social limitations; limited to simple, routine instructions that can be learned in 30 days or less; and limited to a low-stress occupation. Tr. 19. In so finding, the ALJ gave "little weight" to the opinions of Travis Matsumoto, P.A., plaintiff's primary care provider, Tr. 24, and found that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and evidence of record, Tr. 22.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 25. At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, including addresser, taper, and patcher. Tr. 25-26. The ALJ thus found plaintiff not disabled under the Act and not entitled to benefits. Tr. 26-27.

## ANALYSIS

Plaintiff argues that the ALJ erred in three regards: (1) in failing to reconcile an alleged inconsistency regarding the VE's testimony; (2) in discounting P.A. Matsumoto's opinions; and (3) in finding plaintiff's symptom testimony not entirely credible. The Court finds that the ALJ did not err regarding the VE testimony or Matsumoto's opinions, but did err in failing to give sufficient, legitimate reasons for discounting plaintiff's symptom testimony.

## I. Vocational Expert Testimony and the Dictionary of Occupational Titles

Plaintiff argues that there is a conflict between the VE's testimony and the job descriptions in the *Dictionary of Occupational Titles* ("*DOT*") that the ALJ failed to reconcile. Specifically, plaintiff argues that the RFC's limitation to "simple, routine instructions" is inconsistent with the reasoning levels of the VE's identified jobs.

A VE's testimony is generally based in part on the *DOT*, and the ALJ has an affirmative duty to determine whether a VE's testimony conflicts with the *DOT*. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). "When there is an apparent conflict between the [VE's] testimony and the" *DOT*—"for example, expert testimony that a claimant can perform an occupation involving [*DOT*] requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). "The ALJ must ask the expert to explain the conflict and then determine whether the [VE's] explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Id.* (quotation omitted); *see also* Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704 (Dec. 4, 2000). "For a difference between [the VE's] testimony and the [*DOT*'s] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

According to the *DOT*, the jobs of addresser, taper (printed circuit layout), and patcher have a Reasoning Level of 2: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." [4] *DOT*, App'x C, Components of the Definition Trailer, 1991

---

[4] *DOT*: Addresser, 209.587-010, 1991 WL 671797; Taper, Printer Circuit Layout, 017.684-010, 1991 WL 646421; Patcher, 723.687-010, 1991 WL 679524 (4th ed., rev. 1991).

WL 688702 (4th ed., rev. 1991). As to reasoning ability, the ALJ's RFC limited plaintiff's work capacity as follows: "She can understand, remember and carry out simple, routine instructions that can be learned in 30 days or less." Tr. 19.

Plaintiff argues that there is a conflict between the "detailed" instructions of Level 2 Reasoning and the "simple, routine instructions" of the RFC. However, courts of this District have repeatedly found that a limitation to "simple, routine instructions" is not inconsistent with Level 2 Reasoning, because "'detailed but uninvolved' necessarily excludes complex instructions." *Davis v. Colvin*, No. 6:15-cv-02429-CL, 2017 WL 1365007, at *7 (D. Or. Apr. 11, 2017), *aff'd*, No. 17-35332, 2018 WL 3828502 (9th Cir. Aug. 13, 2018); *Barnes v. Colvin*, No. 6:14-cv-01906-HZ, 2015 WL 8160669, at *4-5 (D. Or. Dec. 7, 2015) (collecting cases).[5] The Ninth Circuit has strongly suggested the same. *Zavalin*, 778 at 846-47 (9th Cir. 2015) ("Level 2 Reasoning—applying common sense to carry out detailed but uncomplicated instructions and dealing with problems involving a few variables—seems at least as consistent with Zavalin's limitation as Level 3 Reasoning, if not more so.").

---

[5] As Judge Hernández has convincingly explained:

> In the definition, the word "detailed" is modified with the words "but uninvolved". The dictionary meaning of "involved" is "complicated". Webster's New Int'l Dictionary 1191 (3d ed.2002). Furthermore, the definition of "complicated" is "not simple". Id. at 465. Thus, "uninvolved" means "simple". The modifier "but uninvolved" must be considered when interpreting the definition of Level Two reasoning. *See e.g.*, *Abrew v. Astrue*, 303 Fed. Appx. 567, 569–570 (9th Cir.2008) (emphasized the phrase "but uninvolved" to affirm the ALJ's finding that plaintiff could perform jobs with Level Two reasoning, despite a limitation to simple tasks). Considering the entire phrase, "detailed but uninvolved", I find that although the instructions may be detailed, they may also be simple. A task that includes "detailed, but uninvolved" instructions may consist of a number of steps, none of which are complex. Therefore, a claimant who is limited to "simple, routine tasks and instructions" is capable of performing a job requiring Level Two reasoning.

*Patton v. Astrue*, No. 6:11-cv-06423-ST, 2013 WL 705909, at *1 (D. Or. Feb. 25, 2013).

Thus, there is no conflict between the VE's testimony regarding potential jobs and the *DOT*. The ALJ did not err in this regard.

## II. Physician Assistant Testimony

Plaintiff's primary care provider, Travis Mutsomoto, P.A, completed a "Fibromyalgia Medical Source Statement" and a "Physical Medical Source Statement," on August 31, 2016, both co-signed by James Kassube, M.D. Tr. 381-88. Matsumoto opined that plaintiff had various physical limitations, would be off-task 25% or more of the work day, would miss three to four days of work per month due to impairments, and would require unscheduled breaks every hour. *Id.* The ALJ gave these opinions "little weight." Tr. 24.

A physician's assistant is not a "acceptable medical source," but is an "other source" who can provide evidence about the severity of a claimant's impairments and how they affect work ability. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Opinions from these ['other'] medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects . . . ." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). "Other source" opinions should be evaluated on such factors as:

• How long the source has known and how frequently the source has seen the individual;
• How consistent the opinion is with other evidence;
• The degree to which the source presents relevant evidence to support an opinion;
• How well the source explains the opinion;
• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
• Any other factors that tend to support or refute the opinion.

*Id.* at *4-5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quotation omitted).

The parties debate the effect of Dr. Kassube's having co-signed Matsumoto's opinions. Plaintiff argues that because a medical doctor signed the opinions, the stricter "clear and convincing" standard, *see Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007), applies for the ALJ to discount the testimony, under the "interdisciplinary team exception," *see Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). However, the regulation that established this exception, 20 C.F.R. § 416.913(a)(6), has been repealed. Moreover, a physician must have worked sufficiently closely with an "other source" provider for this exception to apply. *Colburn v. Berryhill*, 694 F. App'x 582, 583 (9th Cir. 2017); *see also Cortez v. Comm'r*, No. 6:17-cv-00194-HZ, 2018 WL 1173423, at *6 (D. Or. Mar. 3, 2018). Even if *Gomez* remains good law and the interdisciplinary team exception survives, the Record lacks evidence that Dr. Kassube worked sufficiently closely with Matsumoto to invoke the exception. There is no evidence that Matsumoto worked under Dr. Kassube's supervision. Records do not show that Dr. Kassube treated plaintiff, and he did not sign any of plaintiff's treatment notes. *See* Tr 434-48, 506-09. On plaintiff's treatment notes, a different doctor, Stacy Chance, M.D., is listed as the primary provider. *Id.* Therefore, the interdisciplinary team exception does not apply, and the ALJ needed only "germane reasons" to discount Matsumoto's opinions. Even under "clear and convincing" standard, however, the ALJ provided sufficient legitimate grounds to discount Matsumoto's opinions.

The ALJ gave germane reasons to discount Matsumoto's opinions. The ALJ found that his opinions were "vague" and did not provide "an explanation for many of the stated limitations." Tr. 24. These are valid reasons to discount medical provider opinions. *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) (affirming ALJ's discounting of a physician's opinions because they did not show how "symptoms translate[d] into specific functional deficits"). Given the limited breadth or depth of Matsumoto's opinions as reflected in the Record, it was reasonable for the ALJ

to find his opinions vague and lacking sufficient support, in view of the cursory explanations he provided for many limitations, and the lack of any explanation for others. Tr. 381-88.

The ALJ also discounted Matsumoto's opinions because he began treating plaintiff on May 17, 2016, even though Matsumoto opined that plaintiff's disability began in December 2013. While a retrospective "diagnosis, standing alone, may not be sufficient to discount the opinion of a treating physician," it is if the ALJ provides additional bases. *Morgan¸* 169 F.3d at 601. Here, the ALJ here provided additional legitimate explanations, such as the vagueness and lack of explanation. Thus, this was also a valid basis to discount the opinions.[6]

The ALJ gave germane reasons to discount Matsumoto's opinions. The ALJ did not err in this regard.

### III.    Plaintiff's Symptom Testimony

The ALJ found plaintiff's statements regarding her symptoms not entirely credible due to inconsistencies with the medical evidence and with the evidence of record. Tr. 22. Plaintiff argues that the ALJ did not give clear and convincing reasons, supported by substantial evidence, to

---

[6] The ALJ also gave two invalid reasons for discounting Matsumoto's opinions. First, the ALJ faulted Matsumoto's opinions because he is not a "mental health specialist." Tr. 24. However, general practitioners and non-specialists may opinion on a wide array of medical areas, including mental health. *E.g., Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Also, only a portion of Matsumoto's opinions concerned mental health. Most concerned physical limitations, on which Matsumoto is indisputably qualified to opine. This was not a germane reason to discount his opinions. Second, the ALJ broadly stated that "the totality of the medical evidence is inconsistent with the stated limitations," and cited various swathes of medical evidence. Tr. 24. However, the ALJ's vague and conclusory characterization of Matsumoto's opinions as inconsistent with "the totality" of the medical evidence, without specifics or further explanation, is not a valid reason to discount his testimony. *E.g.*, *Revels v. Berryhill*, 874 F.3d 648, 665-66, 668 (9th Cir. 2017); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). However, because the ALJ provided other, legitimate bases for discounting Matsumoto's opinions, any error here was harmless. *Molina*, 674 F.3d at 1112 & n.4.

discount her symptom testimony. Plaintiff is correct that the ALJ erred by not providing legitimate reasons, supported by substantial evidence, for discounting her testimony.

When deciding whether to accept a claimant's subjective symptom testimony, the ALJ performs a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage, the ALJ assesses the credibility of the claimant's testimony regarding the symptoms' severity. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination; the ALJ must rely on substantial evidence. *Id.* In order to find a plaintiff's testimony regarding the degree of impairment unreliable, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's symptom testimony, including

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

The ALJ's first reason for discounting plaintiff's testimony was that, although plaintiff claimed a disability onset date of December 2013, she did not seek medical treatment until February 2014. However, a mere two-month delay before receiving treatment can hardly be considered an inconsistency in symptom testimony. *Cf. Orn*, 495 F.3d 625, 638 (9th Cir. 2007); *Webber v. Astrue*, 305 F. App'x 311, 314 (9th Cir. 2008). To the contrary, the Record reflects fibromyalgia treatment beginning a year and a half earlier, in July 2012. Tr. 378. The Record also reflects regular care before the onset date. *E.g.*, Tr. 355-78. Plaintiff's medical care was not "sporadic and limited" until March 2015. Tr. 22. That plaintiff received treatment for mental health concerns from primary care physicians is also not a legitimate reason to discount opinions. *See Falco v. Astrue*, No. 3:11-cv-01065-SI, 2013 WL 26235, at *4 (D. Or. Jan. 2, 2013); n.6 *supra*.

Next, the ALJ suggested that the Record did not contain sufficient complaints or treatment regarding problems with migraines or pain. However, the ALJ herself found migraines to be a severe impairment, Tr. 16, and repeatedly cited medical evidence of migraines in her decision, Tr. 20-22. The Record reflects numerous times when plaintiff sought treatment for significant migraines, for which plaintiff also took prescription medication. *E.g.*, Tr. 266, 274, 280, 352, 356, 415, 430, 452. Likewise, plaintiff received extensive treatment for fibromyalgia and chronic pain (which the ALJ also listed as severe impairments). The ALJ has selectively cited a subset of evidence and test results to support the contention that plaintiff's fibromyalgia symptoms were less intense than claimed, while neglecting substantial evidence of record showing the severity of

fibromyalgia- and pain-related impairments.  *E.g.*, Tr. 243, 254, 260, 267, 369, 379, 451, 471, 489. *See Holohan*, 246 F.3d at 1207.

The ALJ erred by not providing valid bases for discounting plaintiff's testimony.  This was in error.  The ALJ must reconsider plaintiff's testimony on remand.

## IV.    Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful.  Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted).  This "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding."  *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quotations, citations, and alterations omitted).  The court may then "remand to an ALJ with instructions to calculate and award benefits."  *Garrison*, 759 F.3d at 1020.  If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Garrison*, 759 F.3d at 1021.

At the first step in the credit-as-true analysis, the Court finds that the ALJ erred in assessing plaintiff's symptom testimony. At the second step, however, the Court finds that outstanding issues remain, and that further administrative proceedings would be useful, specifically, on how much weight to assign plaintiff's testimony, and what limitations to assess based on them. An immediate award of benefits is not justified.

## CONCLUSION

For these reasons, the Court REVERSES the ALJ's decision and REMANDS for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 24th day of January, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge